101 F.3d 716
 41 U.S.P.Q.2d 1314
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
William BRADSHAW and Robert Shepherd, Plaintiffs-Appellants,
v.
IGLOO PRODUCTS CORPORATION, Defendant-Appellee.
 No. 96-1199.
 United States Court of Appeals, Federal Circuit.
 Nov. 15, 1996.
 
 Before RICH, MICHEL and PLAGER, Circuit Judges.
 MICHEL, Circuit Judge.
 William Bradshaw and Robert Shepherd (collectively "Bradshaw") appeal the order of the United States District Court for the Northern District of Illinois, 94-CV-6497, entered January 5, 1996, granting summary judgment to Igloo Products Corporation ("Igloo") and holding that Igloo's products did not infringe Bradshaw's patent either literally or under the doctrine of equivalents. The appeal was submitted for our decision after oral argument on October 7, 1996. The decision of the district court is affirmed-in-part and vacated-in-part, and the case is remanded.
 
 FACTS
 
 1
 Bradshaw is the owner of United States Patent No. 4,873,841 ("the '841 patent") directed to a portable cooler on wheels. Bradshaw calls his portable cooler the "Cool Wheeler." Although the '841 patent contains 15 claims, only three are independent. Independent claim 1 reads as follows (with the disputed terms in bold):
 
 1. A portable cooler comprising:
 
 2
 a cooling compartment;
 
 
 3
 an axle positioned through the lower portion of one end of the cooling compartment and extending beyond the sides of the cooling compartment;
 
 
 4
 a pair of wheels, one of which is coupled to each end of the axle; a wheel nut coupled to the end of axle securing said wheels to the axle;
 
 
 5
 a pair of handle support structures coupled to opposite sides of the cooler compartment: each support structure having a handle support axle;
 
 
 6
 a lifting handle coupled to the handle support axle of each handle support structure enabling the cooler to be easily lifted to and from a vehicle; and
 
 
 7
 a pulling handle coupled to one of the handle support axles wherein said pulling handle being easily rotated about the handle axle enabling a user to easily and comfortably pull the portable cooler.
 
 
 8
 Claims 6 and 11 contain similar disputed terms.
 
 
 9
 Igloo manufactures two different models of coolers that are accused of infringement.[1] The first is known as the "Rolling Kool Locker." According to Igloo, the Rolling Kool Locker "has a rotatable lifting handle located on each end of the storage container compartment. It does not have a separate pulling handle; one of the lifting handles is used to pull the cooler." The other model is known as the "Cool Roller." According to Igloo, the Cool Roller:
 
 
 10
 has a rotatable lifting handle pivotally connected to a mounting bracket at each end of the cooling compartment. The COOL ROLLER also has a pulling handle, separate from the lifting handles, which is pivotally connected to the end of the cooling compartment opposite the wheels through an axle which is independent and separated from the bracket (and lifting handle support axle) to which the lifting handle is coupled.
 
 
 11
 Prior to the manufacture and sale of the Cool Roller, Igloo built two prototypes of this cooler. The prototypes had a pulling handle pivotally coupled to the same axle as the lifting handle and were used as a display in Igloo's pre-product launch campaign.
 
 
 12
 On October 28, 1994, Bradshaw filed a complaint in the Northern District of Illinois alleging that Igloo's products infringed the '841 patent and that Igloo violated the Illinois Deceptive Trade Practices Act. Igloo answered and filed a counterclaim seeking a declaratory judgment that the '841 patent was invalid and not infringed. At the close of discovery, Igloo filed a motion for summary judgment of no infringement, which the district court granted. The district court dismissed the declaratory judgment counterclaim as moot. As the federal claims were dismissed, the district court also dismissed the state law claim without prejudice. The district court's decisions regarding the counterclaim and the state law claim, however, are not appealed.
 
 DISCUSSION
 
 13
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review de novo the district court's grant of summary judgment. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).
 
 CLAIM CONSTRUCTION AND LITERAL INFRINGEMENT
 
 14
 The district court ruled that the claims unambiguously require that the pulling handle be attached to a handle support axle and, as the claims indicate there is only one axle on each side of the cooler, the pulling and lifting handle must be attached to the same axle. The district court also ruled that the claims call for two separate handles on the side of the cooler opposite the wheels. Finally, the district court noted that its construction of the plain language of the claims was consistent with the drawings (which show two handles attached to a single axle) and the language in the specification. As the Rolling Kool Locker used a single pulling/lifting handle and as the Cool Roller used separate attachment axles for the lifting and pulling handles, there could be no literal infringement. Bradshaw appeals only the holding regarding the Rolling Kool Locker and argues the district court erred in its construction of claims 1, 6, and 11 by concluding that the claims are limited to a separate lifting handle and separate pulling handle attached to a single axle.
 
 
 15
 Claim construction is a matter of law subject to de novo review. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995), aff'd, 116 S.Ct. 1384 (1996). We fully agree with the district court's construction and therefore affirm the holding of no literal infringement. The patent consistently speaks of the lifting handles and the pulling handle as distinct elements. The claims so indicate ("a lifting handle coupled to the handle support axle ... and a pulling handle coupled to one of the handle support axles ...."), the specification so indicates ("At opposite ends ... of the cooler box are positioned lifting handles.... The pulling handle is coupled to the lifting handle support structure...."; "When not in use, i.e., being pulled, the [pulling] handle fits snuggly against a handle clip ...."), and the drawings so indicate. There is absolutely no suggestion anywhere in the patent that the claims refer to anything less than a total of three separate handles. Likewise, the patent is equally clear that the lifting handle and the pulling handle on the side of the cooler opposite the wheels are both coupled to the same attachment axle. In light of this claim construction, there can be no genuine question of fact regarding literal infringement of the '841 patent by the Igloo product and the grant of summary judgment was proper.
 
 INFRINGEMENT BY THE PROTOTYPES
 
 16
 Turning to the prototypes of the Cool Roller, the district court correctly held that the use of the prototype was neither a "use" nor a "sale" under 35 U.S.C. § 271(a). Thus, the district court concluded Igloo had not infringed Bradshaw's patent. We see no error in the district court's conclusion regarding the "use" and "sale" prongs of section 271. See Standard Havens Prods. v. Gencor Indus., 953 F.2d 1360, 1374, 21 USPQ2d 1321, 1332 (Fed.Cir.1991) ("Regarding the three noninfringing plant sales, Standard Havens argues that Gencor's bids for those sales 'included their infringing counterflow plant and only later did Gencor introduce the parallel flow plant.' Because of that substitution, which Standard Havens refers to as a 'bait and switch' tactic, Standard Havens contends that it lost sales of its counterflow plant. We agree with Gencor, however, that because a contributorily infringing counterflow plant was not actually sold [or used] in those three instances, there was no direct infringement ... and, thus, no contributory infringement.") (emphasis added).
 
 
 17
 While we note that the district court improperly failed to also decide whether the making of the prototype infringed the patent, we nevertheless affirm the district court's no infringement ruling, as there is absolutely no evidence of record that the prototypes contained a "cooling compartment" as required by the claims. In fact, all of the evidence suggests the prototypes did not have a cooling compartment. For example, the affidavits from two of Igloo's customers, Cotter & Company and Target Stores, indicate the prototype shown to them was merely a wooden mock-up. Moreover, the affidavit of Bradshaw's expert states that the Igloo prototype had a "full-scale model cooling compartment." Likewise, when comparing the prototype to the claims, Bradshaw's expert stated that the prototype "represents" a portable cooler. This is in direct contrast to his analysis of the Rolling Kool Locker which "is" a portable cooler and the Cool Roller which "is" a portable cooler. Bradshaw, as the patentee, bears the burden of proving infringement. Wilson Sporting Goods v. David Geoffrey & Assoc, 904 F.2d 677, 685, 14 USPQ2d 1942, 1949 (Fed.Cir.1990). By failing to present any evidence regarding whether the prototypes had a cooling compartment, Bradshaw has failed to raise a genuine question of fact regarding infringement by the prototypes. Thus, any error on the part of the district court was harmless.
 
 THE DOCTRINE OF EQUIVALENTS
 
 18
 In its doctrine of equivalents analysis, the district court recognized that the range of legally available technological equivalents is limited by the prior art, citing Key Mfg. Group, Inc. v. Microdot, Inc., 925 F.2d 1444, 1449, 17 USPQ2d 1806,1810 (Fed.Cir.1991) ("A range of equivalents may not embrace inventions already disclosed by the prior art."). It therefore analyzed numerous examples of prior art that had not been before the examiner and concluded that the patent would be invalid as obvious in light of the prior art if the claims had been drawn broadly enough to read on the accused devices.
 
 
 19
 Although summary judgment of non-infringement may still be appropriate in this case after a proper analysis of the prior art, we cannot agree with the district court's analysis for the two reasons discussed below. We must therefore vacate its ruling on the doctrine of equivalents issue, and hence its judgment in favor of the accused infringer, and remand for further proceedings.
 
 
 20
 First, the district court erred when it considered only whether selected limitations of the claims were disclosed in the prior art and failed to consider the patented invention as a whole. Specifically, referring to United States Patent No. 4,976,448, the district court noted this patent "shows that attaching a pulling handle near the top of the cooler compartment on the side opposite two wheels was already disclosed by the prior art." Referring to United States Patent No. 4,846,493, the district court noted this patent discloses that the pulling handle should be near the top and "that attaching the pulling handle on a separate device below the lifting handle is not an innovation." Thus, the court stated "defendant's devices cannot be found to be equivalent infringements based on having pulling handles attached near the top of a side opposite two wheels." While the location of the handles is the only element involved in the present dispute regarding infringement by equivalents, it is not the only limitation within the asserted claims. For example, claim 1 recites several limitations regarding the placement of the axle, claim 6 requires axle support extensions coupled to the underside of the cooling compartment, and claim 11 requires a semi-circular groove positioned on the underside of the cooling compartment. It is conceivable that any one of these limitations, alone or in combination with the other limitations, may have been sufficient to confer patentability, and the district court erred when it failed to address this possibility in its analysis.
 
 
 21
 Second, the district court also erred when it failed to consider that two separate products with distinct structural characteristics were alleged to infringe, thereby failing to consider that the scope of patent protection would have to be expanded beyond that afforded by the claims in two separate respects depending on the product alleged to infringe. Namely, the scope of the right to exclude would have to extend to pulling handles attached on two separate axles to cover the Cool Roller and it would have to extend to a combined lifting and pulling handle to cover the Rolling Kool Locker. On remand, the district court should consider the two accused products on an individual basis.
 
 COSTS
 
 22
 Each party to bear its own costs.
 
 
 
 [1]
 Although Igloo manufactures a variety of different styles of coolers alleged to infringe, each of the allegedly infringing coolers is one of two model types. The style varies only with respect to aspects such as size; in other words, the differences in the various styles are not relevant to the issue of infringement